885 So.2d 1193 (2004)
Vera M. RAINEY
v.
ENTERGY GULF STATES, INC.
No. 2001 CA 2414.
Court of Appeal of Louisiana, First Circuit.
June 25, 2004.
*1195 Jo Ann Mays, Appellee In Proper Person.
James McCallister, Appellee In Proper Person.
Leonard Cardenas III, Baton Rouge, Counsel for Appellee Craig Brigalia.
John A. Braymer, Baton Rouge, Kenneth P. Carter, Joseph K. West, New Orleans, Counsel for Appellant Entergy Gulf States, Inc.
Before: KUHN, DOWNING, and LANIER,[1] JJ.

ON REHEARING
LANIER, J.
We granted a rehearing in this matter to review our previous ruling on original hearing that the trial court abused its discretion when it denied the defendant-appellant Entergy's motion to amend its answer to assert the statutory employer affirmative defense when no trial was scheduled at the time the motion was filed. Rainey v. Entergy, 01-2414 (La.App. 1 Cir. 11/8/02), 840 So.2d 586. During the oral argument on rehearing, we noted that the appellee was Craig Brigalia in his capacity as testamentary executor of Rainey's succession, that Rainey was survived by two children and that it was arguable that Rainey's surviving children, and not Brigalia, were the proper parties plaintiff-appellee. Prior to submission of this matter on rehearing Entergy filed a peremptory exception raising the objection that Brigalia had no right of action, and Brigalia filed a "Motion of Intervention" to be recognized as a party appellee individually, or, in the alternative, as a particular legatee and a residual legatee of Rainey's estate and cause of action.
Thereafter, on our own motion, we ruled that Rainey's children were parties needed for a just adjudication pursuant to La. C.C.P. art. 641 et seq. and remanded this action to the trial court with instructions to (1) cite Rainey's children to appear and assert or renounce any claims they had herein pursuant to Article 641 et seq., (2) have a hearing and decide Entergy's peremptory exception, and (3) take appropriate action on Brigalia's motion to intervene. Rainey v. Entergy, 01-2414 (La.App. 1 Cir. 7/2/03), 859 So.2d 63. Brigalia sought a supervisory writ for review of these rulings; it was denied. Rainey v. Entergy, 03-2107 (La.11/14/03), 858 So.2d 426.
On remand the trial court held a hearing that was attended by Rainey's children in proper person. The children orally stated they wanted to be parties. After the hearing, the trial court (1) ruled that Rainey's children "be hereby procedurally substituted as parties plaintiff" but did not require the children to file formal pleadings as required by La. C.C.P. arts. 644-646, (2) overruled Entergy's peremptory exception raising the objection of no right of action and (3) granted "Brigalia's Alternative Motion to Intervene." Thereafter, *1196 this action was returned to this court for review on rehearing.

AMENDMENT OF ANSWER TO ASSERT AFFIRMATIVE DEFENSE OF STATUTORY EMPLOYER
After due consideration, we conclude that our decision on original hearing is correct and it is reinstated. The original judgment of the trial court is reversed and this action is remanded to the trial court with the instructions previously given.

OWNERSHIP OF RAINEY'S CAUSE OF ACTION: OBJECTION OF NO RIGHT OF ACTION
Entergy asserts the trial court committed error by overruling its peremptory exception with the following rationale:
Entergy submits that the Trial Court committed an error in denying its Exception of No Right of Action as the legal authority cited by Entergy, together with the testimony of Professor Mengis, clearly shows that La. C.C. Art. 2315.1, as provided for in C.C.P. Article 801, provides the specially designated classes of beneficiaries for the pursuit of this action. Further, one class of beneficiary is exclusive of the lower classes identified in 2315.1. The Trial Court erred in denying Entergy's Peremptory Exception of No Right of Action as to Craig Brigalia, the testamentary executor of Vera Rainey's estate, as he belongs to a lower class of the designated beneficiaries. A member of this class is precluded from proceeding in Vera Rainey's stead due to Jo Ann Mays and James [McCallister]'s joinder in the suit.
Brigalia responds with the following assertions:
Vera Rainey properly and validly transferred all of her substantive rights to the judgment at issue in this appeal to Craig Brigalia, which rights are heritable and freely transferable as a matter of law; therefore he, and only he, is the proper party plaintiff to pursue that judgment on appeal[.]
* * *
The Exceptions of Failure to Join Indispensible Parties and No Right of Action are the wrong procedural vehicles by which to properly raise the issue of whether Craig Brigalia has the procedural capacity to proceed as substituted party plaintiff: the Dilatory Exception urging the Lack of Procedural Capacity provides the proper vehicle to raise this issue and, since it was not timely filed, that challenge has been waived.
* * *
The legislatively intended effect of Art. 2315.1ensuring the non-abatement of actionstogether with the evolution of the codal scheme to grant and expand rightsnot to restrict or limitrenders Article 2315.1 inapplicable to the facts of this case[.]
* * *
The application of Art. 2315.1 to this case is not only erroneous as a matter of law, it also has the effect of resurrecting forced heirship, which has been Constitutionally abolished in Louisiana[.]
(Emphasis omitted)

Facts
The trial on the merits herein was held on December 6-8, 2000.
On February 12, 2001, Vera M. Rainey executed a last will and testament by notarial act wherein she designated Craig Brigalia as testamentary executor of her succession and bequeathed her "lawsuit" to him in a particular legacy.
On March 14, 2001, the trial court rendered judgment herein in favor of Rainey. Entergy filed a motion for a new trial that *1197 was denied on April 4, 2001. Entergy then took a suspensive appeal that was filed on May 9, 2001.
Rainey died on May 25, 2001. Her succession was opened on June 29, 2001. Attached to the succession proceedings is an affidavit of death and heirship showing that Rainey was survived by two children: Jo Ann Mays and James McCallister.[2] On July 6, 2001, Brigalia was confirmed as testamentary executor of Rainey's succession by order of the 21st Judicial District Court.
On October 25, 2001, Brigalia filed a motion in this court to substitute himself as the "proper party plaintiff" in the appeal pursuant to the authority of the judgment confirming him as testimony executor of Rainey's succession. On April 5, 2002, a three-judge panel of this court granted Brigalia's motion to be "substituted as a proper party plaintiff as successor to plaintiff/appellee Vera M. Rainey."
On June 10, 2002, a partial judgment of possession was rendered in Rainey's succession; it did not place Brigalia in possession of Rainey's "lawsuit".[3]

Applicable Law
Because Rainey was a natural person, her personality terminated with her death. La. C.C. arts. 24-25. A judgment rendered for or against a dead person is a nullity. Cortes v. Fleming, 307 So.2d 611 (La.1973). The appeal in this case was taken before Rainey died. At that point in time, the jurisdiction of the trial court was divested and the jurisdiction of this court attached. La. C.C.P. art. 2088. Thus, we can not render a valid judgment in this case unless a proper person plaintiff-appellee is substituted for Rainey.
Louisiana Code of Civil Procedure Article 821 provides that "[t]he substitution of parties in an action pending ... in a court of appeal is governed by the rules of the appellate court." Rule 2-9 of the Uniform RulesCourts of Appeal provides that "[t]he rules and procedures for substitution of parties provided by LSA-C.C.P. Arts. 801-807 shall regulate the substitution of parties." (Emphasis added.) Louisiana Code of Civil Procedure Article 801 (herein after referred to as Article 801) provides as follows:
When a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party, on ex parte written motion supported by proof of his quality.

As used in Articles 801 through 804, "legal successor" means:

(1) The survivors designated in Article 2315.1 of the Civil Code, if the action survives in their favor; and

(2) Otherwise, it means the succession representative of the deceased appointed by a court of this state, if the succession is under administration therein; or the heirs and legatees of the deceased, if the deceased's succession is not under administration therein.
(Emphasis added.) Louisiana Civil Code Article 2315.1 (hereinafter referred to as Article 2315.1) provides as follows:

Art. 2315.1. Survival action
A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi *1198 offense, shall survive for a period of one year from the death of the deceased in favor of:

(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
(4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.
B. In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the offense or quasi offense, may be urged by the deceased's succession representative in the absence of any class of beneficiary set out in Paragraph A.

C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
D. As used in this Article, the words "child", "brother", "sister", "father", "mother", "grandfather", and "grandmother" include a child, brother, sister, father, mother, grandfather, and grandmother by adoption, respectively.
E. For purposes of this Article, a father or mother who has abandoned the deceased during his minority is deemed not to have survived him.
(Emphasis added.)
Article 2315.1 is found in Book IIIOf the Different Modes of Acquiring the Ownership of Things, Title VObligations Arising Without Agreement, Chapter3Of Offenses and Quasi Offenses of the Civil Code. For an excellent history of the Article 2315.1 survival action See J. Johanson, Comment, Common Law "Intervention": The Rights of Successors and the Uneasy History of Louisiana's Survival Action, 77 Tul. L.Rev. 737 (2003).

Rules for Interpreting Laws
Interpretation of laws is the province of the judicial branch of State government. The starting point for the interpretation[4] of a law is the language of the law itself. Rules for interpreting the Revised Statutes and the Civil Code have been enacted by the legislative branch and are found in La. R.S. 1:1 et seq. and Civil Code Article 9 et seq. Louisiana Revised Statute 1:3 provides, in pertinent part, that "[w]ords and phrases ... shall be construed according to the common and approved usage of the language" and the "word `shall' is mandatory." (Emphasis added.) Louisiana Revised Statute 1:4 provides that "[w]hen the wording of a Section [of the Revised Statutes] is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." Louisiana Civil Code Article 10 provides that "[w]hen the language *1199 of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." Louisiana Civil Code Article 13 provides that "[l]aws on the same subject matter must be interpreted in reference to each other." A court is bound to follow the language of a relevant law. See La. C.C. arts. 1-4.
The jurisprudence has developed additional rules for interpreting laws. In Ransome v. Ransome, 01-2361, p. 8 (La.App. 1 Cir. 04/21/02), 822 So.2d 746, 754 appears the following:
Pursuant to the standard rules for statutory construction (1) it is presumed that every provision of law was intended to serve some useful purpose; (2) it is not presumed that the lawmaker intended for any part of a law to be meaningless; (3) the lawmaker is presumed to have enacted the law with full knowledge of all other laws pertaining to the same subject matter; (4) it is the duty of the courts to interpret a provision of law which harmonizes and reconciles it with other provisions pertaining to the same subject matter; and (5) when a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is preferred to one that renders part of the act nugatory.
See also David v. Our Lady of the Lake Hospital, Inc., 02-2675, p. 11 (La.07/02/03), 849 So.2d 38, 46-47; Gregor v. Argenot Great Central Insurance Company, 02-1138, pp. 6-7 (La.05/20/03), 851 So.2d 959, 964.

Nature of the Survival Action
As previously indicated, Article 2315.1 is found in Civil Code Book III entitled Of the Different Modes of Acquiring the Ownership of Things and is further located in Title V of that Book entitled Obligations Arising Without Agreement. La. C.C. art. 1756 defines an obligation as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." La. C.C. art. 1757 provides, in pertinent part, that "[o]bligations... arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts...." La. C.C. art. 1758 A provides, in pertinent part, that "[a]n obligation may give the obligee the right to: ... (3) Recover damages for the obligor's failure to perform, or his defective or delayed performance." (Emphasis added.) Thus, under the general law of obligations an obligee has a right to a cause of action against his obligor for damages if the obligee is damaged by the obligor's failure to perform, or defective performance of, the obligation. Stated more simply, the right to recover damages for the breach of an obligation is a cause of action. La. C.C. art. 1765 provides in pertinent part, that "[a]n obligation is heritable when its performance may be enforced by a successor of the obligee ..." and that "[a] heritable obligation is also transferable between living persons." (Emphasis added.) In Revision Comments1984 (b) for Article 1765 appears the following: "Under this Article, an obligation is heritable when it is transferable mortis causa."
Louisiana Civil Code Article 2315 entitled "Liability for acts causing damages" states the general tort (delictual) duty of care that a person (the obligor or tort feasor) owes to another (the obligee or tort victim) as follows: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Violation of this duty by the tort feasor-obligor creates a right of action in the tort victim-obligee to a cause of action for damages. Article 2315.1 entitled "Survival Action" is a specific statute whose purpose is to provide for the transfer of *1200 the ownership of a tort cause of action when the tort victim-obligee dies prior to, or during the pendency of, litigation. The tort cause of action is described in Article 2315.1 as "the right to recover all damages for injury ... caused by the offense or quasi offense". The successors (beneficiaries) of the obligee who have the right of action to enforce the cause of action are specifically listed in Article 2315.1 A(1) through (4). In the instant case, they are Rainey's children.
Further, a cause of action in tort is an incorporeal movable thing and property that is owned under Louisiana law. See La. C.C. arts. 448, 461, and 473; Heyse v. Fidelity & Casualty Co. of New York, 255 La. 127, 229 So.2d 724 (1969). See also La. C.C. arts. 1536 and 2652; La. R.S. 13:3864-3868; Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, 1145; Mahayna, Inc. v. Poydras Center Associates, 96-2089 (La.App. 4 Cir. 4/30/97), 693 So.2d 355, writ denied, 97-1741 (La.10/13/97), 703 So.2d 619; Conrad v. Swiss Chalet Picnic Grounds & Catering Service, 96-606 (La.App. 5 Cir. 12/30/96), 686 So.2d 1055, writ denied, 97-0299 (La.3/21/97), 691 So.2d 87; A. Yiannopoulos, Property, § 146, 149 and 197, 2 Louisiana Civil Law Treatise (4th ed.2001). Thus, ownership of a tort cause and right of action can be acquired by (1) succession, (2) the effect of an obligation or (3) the operation of law. La. C.C. art. 870.
Article 2315.1 is a law that specifically determines how the ownership of a tort cause and right of action is transmitted upon the death of its original owner. Article 2315.1 clearly and unambiguously transmits the particular tort cause and right of action to designated classes of beneficiaries after the death of the tort victim without the necessity of a succession proceeding. As provided for in Louisiana Civil Code Article 870, this transfer is accomplished "by the operation of law."

Jurisprudence and Treatises
In Haas v. Baton Rouge General Hospital, 364 So.2d 944, 945 (La.1978) appears the following:
According to the clear language of the first sentence of the third paragraph of the above article, the right to recover damages (other than property damages) caused by an offense, upon the death of the injured person, shall survive for a period of one year from the death of the deceased in favor of certain designated beneficiaries. The right of action does not pass through the victim's succession to be transmitted to his heirs as an inheritance. Instead, it devolves exclusively upon specially designated classes of beneficiaries or survivors set forth in said article. Therefore, in the instant case, upon the death of Mrs. Pedigo, tort victim, the right to recover damages for the personal injuries sustained by her as a result of the alleged offense survived solely in favor of her spouse, Mr. Pedigo, in view of the fact that Mrs. Pedigo died without children. Hence, the succession representative of the tort victim's estate has no right to bring the action to recover damages for the personal injuries sustained by the tort victim. The court of appeal correctly sustained the exception of no right of action insofar as it was directed at plaintiff in his capacity as administrator of Mrs. Pedigo's estate.
* * *
... In sum, although the Tort victim's right of action does not form part of her own succession, it is included in the Beneficiary's estate, and thus is transmitted upon his death to his heirs according to the laws of succession.
(Emphasis added.)
The following found in Carl v. Naquin, 93-1725 (La.App. 1 Cir. 5/20/94), 637 So.2d *1201 736, 737-8, accurately shows how Article 2315.1 and Article 801 should be interpreted together:
As stated by the trial court, the statutes applicable to the resolution of this issue are clear and unambiguous and clearly designate the categories of legal successors who are proper party plaintiffs. LSA-C.C.P. art. 801 states:
When a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party....
As used in Articles 801 through 804, "legal successor" means:

(1) The survivors designated in Article 2315.1 of the Civil Code, if the action survives in their favor; and

(2) Otherwise, it means the succession representative of the deceased appointed by a court of this state, if the succession is under administration therein; or the heirs and legatees of the deceased, if the deceased's succession is not under administration therein.
([E]mphasis added). LSA-C.C. art. 2315.1 designates the hierarchy of survivors who inherit a cause of action for damages as a result of an offense or quasi-offense as follows:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children;
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving; and
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child or parent surviving. LSA-C.C. art. 2315.1 further provides:
B. In addition, the right to recover all damages for injury to the decedent, his property or otherwise, caused by the offense or quasi offense, may be urged by the decedent's succession representative in the absence of any class of beneficiary set out in the preceding Paragraph.

([E]mphasis added). Paragraph B is a codification of our supreme court's ruling in Nathan v. Touro Infirmary, 512 So.2d 352 (La.1987), wherein it affirmatively resolved the issue of whether a succession representative as plaintiff may continue a LSA-C.C. art. 2315 personal injury suit brought by a victim who died without surviving beneficiaries as designated by then LSA-C.C. art. 2315. In applying the two statutes, the court likewise found them to be clear and unambiguous, and concluded, "the wording of C.C.P. art. 801 clearly shows that C.C. art. 2315 beneficiaries are to be given first preference in the definition of `legal successor'." Id. at 355.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9....
Clearly, since Ms. Carl was survived by a brother, he is to be given first preference as "legal successor", and pursuant to the application of C.C.P. art. 801 together with C.C. art. 2315.1, he is the proper party plaintiff. Furthermore, paragraph (B) of 2315.1, which confers rights to the succession representative only in the "absence of any class of beneficiary" set out in C.C. art. 2315.1(A) is rendered inoperative.
(Emphasis added; some citations deleted.) See also Short v. Plantation Management Corporation, 99-0899 (La.App. 1 Cir. 12/27/00), 781 So.2d 46, 51-52.
In W. Crawford, Tort Law, § 5.7, at 97-8, in 12 Louisiana Civil Law Treatise (2000) appears the following:

*1202 § 5.7 The Survival Action
C.C. art. 2315.1 provides that the right to recover all damages for injury to the decedent, or his property, shall survive for a period of one year from the death of the deceased in favor of the listed beneficiaries. The article thus provides for the transmission of the right of recovery from the decedent to the beneficiary.

The transmission of the right to enforce an obligation other than delictual is contained in the Code of Procedure. The article applies both to an action to enforce the obligation and to the right to enforce an obligation. An "action" is a term of art from the Code of Procedure. Action is thus a demand in the form of pleadings filed in court. The transmission of the obligation from the deceased to the living is therefore provided for whether it is already a [lawsuit] or whether it is still only a cause of action arising from the obligation owed to the decedent.

If the decedent filed an action to recover his own injuries prior to his death, it is provided in C.C.P. art. 428 that the action does not abate upon the death of either party and the action could proceed with substituted parties, C.C.P. 801. (The only time-bar would be abandonment under C.C.P. [a]rt. 561.)
(Emphasis added; footnotes omitted.)
In W. Mengis, The Article 2315.1 Survival Action: A Probate or Non-Probate Item, 61 La. L.Rev. 417, 422 (2001), appears the following:

The proceeds from a survival action should be excluded from the estate of the decedent if there exists a survivor under Article 2315.1. Indeed, it is clear from the discussion above that the deceased may have property rights that do not go through the "succession process." Furthermore, Article 801 of the Louisiana Code of Civil Procedure specifically provides that a "legal successor" includes survivors designated in Article 2315.1 of the Civil Code, when the action survives in their favor. Albeit, one should consider the intent of the deceased as clearly expressed in his last will and testament, but the United States Supreme Court, in Boggs v. Boggs, [520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997)], held that legislative acts (whether federal or state) govern the disposition or transmission of certain assets, regardless of a testator's attempt to divert them.

The provisions of Article 2315.1 point to the conclusion that the legislature intended for the survival action to be "self-contained" and unaffected by the succession distribution laws. The cases involving this situation clearly hold that a right of action does not pass through a victim's succession to be transmitted to his heirs as an inheritance. Instead, the cause of action devolves exclusively upon the specially designated classes of beneficiaries or survivors set forth in Article 2315.1.
(Emphasis added; footnotes omitted.) See also F. Maraist and H. Lemmon, Civil Procedure, § 4.13, at 84-5, 1 Louisiana Civil Law Treatise (1999); F. Maraist and T. Galligan, Louisiana Tort Law, 18.1-18.2, at 415-421 (1996); T. Andre', Louisiana Wrongful Death and Survival Actions, § 2-31, pp. 2-44 to 48 (2nd ed.1993).

Succession Law
The essence of Brigalia's assertions in his brief after remand is that because Rainey filed suit while she was still alive and, thereafter, made a donation mortis causa of her "lawsuit" rights to him, the substantive and procedural laws of succession should prevail over the provisions of Article 2315.1 and Article 801. This argument is without merit
*1203 A succession is the transmission of the estate of a deceased to his successors. La. C.C. art. 871. Succession occurs at the death of a person. La. C.C. art. 934. There are two types of successors for succession purposes: testate or legatees and interstate or heirs. La. C.C. art. 876. These definitions of successor are not in conflict with the definitions of "legal successor" found in Article 801. Laws on the same subject matter must be interpreted in reference with each other. Because of the various subordination clauses discussed herein below, Article 801 prevails in delictual matters.
Article 426 of the Louisiana Code of Civil Procedure entitled "Transmission of action and of right to enforce obligation" provides that "[a]n action to enforce an obligation is the property of the obligee which on his death is transmitted with his estate to his heirs, universal legatees, or legatees under universal title, except as otherwise provided by law." (Emphasis added.) The emphasized clause subordinates Article 426 to Articles 2315.1 and 801. Louisiana Code of Civil Procedure Article 685 provides that "[e]xcept as otherwise provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration." (Emphasis added.) The emphasized clause subordinates Article 685 to Articles 2315.1 and 801. Because Article 685 is subordinated to Articles 2315.1 and 801, La. C.C.P. art. 3196, which authorizes a succession representative to "exercise all procedural rights available to a litigant," and La. C.C.P. art. 3211, which states that a succession representative "shall be deemed to have possession of all property of the succession and shall enforce all obligations in its favor," also are subordinated to Articles 2315.1 and 801.
Louisiana Civil Code Article 1470 provides, in pertinent part, that "[a]ll persons have capacity to make and receive donations ... mortis causa, except as expressly provided by law." (Emphasis added.) The emphasized clause subordinates Article 1470 to Articles 2315.1 and 801. Because of this subordination, a person does not have the capacity to make or receive a donation mortis causa of a tort cause and right of action as long as a beneficiary listed in Article 2315.1 is alive. The tort cause and right of action herein was transmitted directly to the favored beneficiaries by operation of law; it legally can not go to the legatee who is not the favored beneficiary in this case. See also La. C.C. art. 1472.
Louisiana Civil Code Article 1519 provides that "[i]n all dispositions ... mortis causa ... conditions ... which are contrary to the laws ... are reputed not written." The legal effect of construing Articles 2315.1, 801, and 1519 together is that Rainey's death caused her legacy of the "lawsuit" to lapse pursuant to the provisions of La. C.C. art. 1589(2). When Rainey died during the pendency of this case, Brigalia, the legatee, lost his legal capacity to receive the legacy. Finally, because of the combined legal effect of Articles 2315.1, 801 and 1519, there can be no seizing by the legatee (Brigalia) as provided for in La. C.C. art. 935.

Conclusion
When Rainey died during the course of this litigation, her "action to enforce the obligation" and her "right to enforce an obligation" were transmitted by Articles 2315.1 A(1) and 801 to her surviving children, Jo Ann Mays and James McCallister. At that time, Rainey's legacy of this tort cause and right of action to Brigalia lapsed. Rainey's children are the proper parties plaintiff-appellee in this *1204 action; Brigalia individually and in his capacities as testamentary executor and particular legatee is not. The trial court erred when it overruled Entergy's peremptory exception raising the objection of no right of action. That judgment is reversed, the exception is sustained and Brigalia's claims are dismissed.

PROCEDURAL POSTURE
Ordinarily, when substitution of a party pursuant to La. C.C.P. arts. 801-807, or 821, is necessary, the lawsuit continues in the procedural posture existing at the time substitution became necessary. See Benware v. Means, 98-0203 (La.App. 1 Cir. 05/12/00), 760 So.2d 641, writ denied, 00-2215 (La.10/27/00), 772 So.2d 650; Kemper v. Don Coleman, Jr., Builder, Inc., 31,576 (La.App. 2 Cir. 7/29/99), 746 So.2d 11, writs denied, 99-2954, 99-2955 (La.1/7/00), 752 So.2d 861; In re Mary Belsom Welsh Qualified Trust, 98-713 (La.App. 5 Cir. 5/19/99), 733 So.2d 1254; Louisiana Health Service & Indem. Co. v. Cole, 418 So.2d 1357 (La.App. 2 Cir.1982); Semon v. City of Shreveport, 389 So.2d 438 (La.App. 2 Cir.1980); Smith v. Burden Const. Co., 379 So.2d 1133 (La.App. 2 Cir.1979); Gulfco Finance of Livingston, Inc. v. Lee, 224 So.2d 524 (La.App. 1 Cir.1969); Woodward v. Lewis, 292 So.2d 728 (La.App. 2 Cir.), writ refused, 294 So.2d 839 (La.1974); Fountain v. American Employers Insurance Company, 161 So.2d 120 (La.App. 3 Cir.1964). See also Zylks v. Kaempfer, 190 La. 839, 183 So. 174 (1938). Because the judgment herein was rendered in the lower court prior to the substitution of parties, it will be res judicata with respect to the substituted successors. See La. R.S. 13:4231-4232; R.G. Claitor's Realty v. Juban, 391 So.2d 394 (La.1980); Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399 (1965); Five N Company, L.L.C. v. Stewart, 02-0181 (La.App. 1 Cir. 7/2/03), 850 So.2d 51; Horrell v. Horrell, 99-1093 (La.App. 1 Cir. 10/6/00), 808 So.2d 363 (on rehearing), writ denied, 01-2546 (La.12/7/01), 803 So.2d 971; Ditch v. Finkelstein, 399 So.2d 1216 (La.App. 1 Cir.1981); Succession of Delesdernier, 184 So.2d 37 (La.App. 4 Cir.1966). Because La. C.C.P. arts. 801-807, and 821 do not specify the procedural course of the litigation after the substitution of a party, courts are authorized to decide the matter according to equity. La. C.C. art. 4; La. C.C.P. arts. 191, 1631 A and 2164.
Based on the particular facts and circumstance of this case, and after considering equity, the interests of justice and judicial economy, we conclude that Rainey's children shall proceed in this case in the procedural posture in which they presently find it. On remand and before proceeding further, the trial court shall substitute Mays and McCallister as parties as provided for in La. C.C.P. arts. 802-804.

DECREE
For the foregoing reasons, it is ordered, adjudged and decreed that (1) the trial court judgment overruling Entergy's peremptory exception raising the objection of no right of action is reversed and judgment is rendered in favor of Entergy and against Brigalia, individually and in his capacities as testamentary executor of Rainey's succession and particular legatee, sustaining the exception and dismissing his action against Entergy with prejudice; (2) our judgment on original hearing is ordered reinstated and this action is remanded to the trial court for further proceedings in accordance with law and the instructions contained in our judgment on original hearing and in accordance with the instructions that follow herein; and (3) prior to commencement of compliance with the instructions in our original judgment, the trial court judge shall cause the substitution of Rainey's children, Jo Ann Mays and James McCallister, as parties in this *1205 action pursuant to the provisions of La. C.C.P. arts. 802, 803, and 804. Brigalia is cast for all costs of the appeal.
REVERSED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] The Honorable Walter I. Lanier, Jr., Judge (Retired), First Circuit Court of Appeal, is serving as judge ad hoc by special appointment of the Louisiana Supreme Court.
[2] The two children also are identified in the record as Joann or JoAnn Mays and James McAllister.
[3] Pursuant to La. C.C.P. art. 421 a "lawsuit" is "[a] civil action" and "is a demand for the enforcement of a legal right... commenced by the filing of a pleading presenting the demand to a court...."
[4] Although interpretation of laws and declaring whether or not they are constitutional are the province of the judicial branch, the enacting, amending and repealing of laws are the province of the legislative branch. Article II of the Louisiana Constitution provides for the separation of the plenary powers of the State into three branches: legislative, executive and judicial. Section 2 of Article II entitled "Limitation of Each Branch" provides that "[e]xcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." Thus, when interpreting a law, a court can not substantively amend the law; to do so would be an unconstitutional violation of the regime of separation of powers provided for in Article II.